**Gam Gun LAM, Petitioner,**

v.

**John ASHCROFT, Respondent.**

No. 03–4785.

United States Court of Appeals, Second Circuit.

April 26, 2005.

Bing Li, Bayside, NY, for Petitioner–Appellant.

Carolyn A. Ikari, Assistant United States Attorney, District of Connecticut (William J. Nardini, Assistant United States Attorney; Kevin J. O'Connor, United States Attorney for the District of Connecticut, on the brief), Hartford, CT, for Respondent–Appellee.

Present: OAKES, and STRAUB, Circuit Judges, and HOLWELL, District Judge.[1]

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for review is hereby DENIED.

Gam Gun Lam ("Lam"), a native and citizen of the People's Republic of China ("China"), petitions this Court pursuant to section 242(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b), for review of a March 24, 2003 decision of the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed the decision of the Immigration Judge ("IJ") denying Lin's application for asylum, withholding of removal, and voluntary departure and ordering his removal from the United States. We assume the parties' familiarity with the facts, decision below, and issues on appeal.

Where the BIA summarily affirms the IJ's decision, we review the decision of the IJ directly. *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). We generally treat an IJ's credibility determination as a factual finding subject to the substantial evidence standard. *Id.* at 307. An asylum applicant bears the burden of establishing that he experienced past persecution or has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Chen v. INS*, 359 F.3d 121, 126 (2d Cir.2004); 8 C.F.R. § 208.13(b). An applicant for withholding of deportation bears the greater burden of establishing that his "life or freedom would be threatened in [his native] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

Lam, who was represented by counsel in the proceedings below, asserts that he has a well founded fear of persecution on the basis of his activities protesting government corruption and advocating for democratic reform. According to his application, his trouble began when, as a manager of a municipal aquatic products company, he noticed that certain government officials were stealing products from the company. When he disclosed these facts to

1. The Honorable Richard J. Holwell, United States District Judge for the Southern District of New York, sitting by designation.

the company and later to the public, he was terminated on the charge of making false accusations against the government. Lam then organized a student demonstration in front of the company building, and engaged in other advocacy and fundraising for the pro-democracy student movement, for which he was arrested, detained for approximately eleven months, then tried and sentenced to four years' imprisonment in a labor camp. Almost a year after Lam was released from prison, he was asked to speak at a commemorative rally. When, arriving late to the rally, he saw police vehicles outside, he went into hiding, and eventually fled. The authorities searched continually for him and posted a warrant for his arrest. To support his account, Lam submitted, *inter alia,* the warrant for his arrest, which he testified his brother had pulled down from a wall.

The IJ found Lam's account not credible, and denied his claim. Specifically, the IJ found that Lam's overall demeanor and manner-his monotone voice, his habit of staring at the ceiling, pausing before answering, failing to answer simple questions, and often responding with information unrelated to the question-suggested that he had memorized a false story. The IJ further noted discrepancies between Lam's application and his testimony, as well as discrepancies within his testimony. Finally, the IJ noted numerous implausible elements to Lam's story: *e.g.,* that he would come to lead a student group so quickly despite his lack of college education; that, despite having been such an active participant in these demonstrations and having been imprisoned for his involvement, Lam would be unable to name in Fu-zhou any principles espoused by the group except for "democracy"; and that

the government would issue the warrant Lam submitted, which described in detail his earlier imprisonment and referred to the students' "June 4th Commemoration Activities."[2] Having rejected Lam's claim, the IJ found that Lam was incapable of voluntary departure because he did not have a passport. We find that the reasons adduced by the IJ were substantial grounds for rejecting his application.

Lam argues on appeal that he was denied due process because his translator was incompetent to translate his preferred dialect. Although Lam requested and was provided with a translator who spoke the Fu-zhou dialect of Mandarin, he argues that the translator spoke a different "kind" of Fu-zhou than Lam's, and that he should instead have had a translator who spoke the general Mandarin with which Lam also is familiar. It is true that there were a few moments during the proceeding when the translator became confused and had to ask Lam for clarification, as well as a couple of words which the translator initially translated incorrectly or questionably and later corrected (specifically, "released" for "sentenced" and "water or sea products" for "seafood or aquatic products"). At one time, Lam asked to answer a question in Mandarin because he "had a lot of dealing with people outside the provinces in using Mandarin." It is not clear from the record whether he was allowed to do so (the translator represented that he understood Mandarin).

Despite these minor problems, we are not persuaded that Lam was deprived of a fair opportunity to testify. Apart from the minor inaccuracies noted above (which were corrected by the translator), Lam does not point to any specific errors in the translation of his testimony. Both the IJ

---

2. "June 4th" refers to the infamous June 4, 1989 "Tiananmen Square Massacre," in which government forces fired into crowds of unarmed demonstrators, mainly students, killing hundreds. Nicholas D. Kristof, *Beijing Death Toll At Least 300,* N.Y. Times, June 5, 1989, at A1.

and the translator took care to ensure that Lam's account came through as accurately as possible, by repeating questions and answers, slowing proceedings down, and replaying the hearing audiotape whenever any confusion arose. Moreover, neither Lam nor his lawyer ever requested a change of translator or informed the IJ that Lam and the translator spoke different sub-dialects of Fu-zhou. To the contrary, when asked by the IJ whether he understood his translator, Lam answered yes. In light of these facts and after reviewing the record fully, we find that Lam was afforded due process.

For the foregoing reasons the petition for review are DENIED.